## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

---

JOSEPH MCDEVITT,                    :         Hon. Joseph H. Rodriguez

      Plaintiff,              :         Civil Action No. 18-17092

  v.                                 :

BOROUGH OF CLEMENTON, et al.,      :         **OPINION**

      Defendants.             :

---

This matter comes before the Court on Partial Motions to Dismiss Plaintiff's Complaint by Defendants, Mark Armbruster, Borough of Clementon, Jonathan Fisher, Charles Grover, Jenai Johnson, and Thomas Weaver [Dkt. No. 6]; and Defendant, Randall Freiling [Dkt. No. 7] (collectively "Defendants"), pursuant to Fed. R. Civ. P. 12(b)(6). Having considered the parties' written submissions, the Court decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78(b). For the reasons stated below, the Court will deny in part and grant in Defendants' Partial Motions to Dismiss [Dkt. Nos. 6, 7].

## I.    Background

Plaintiff, Joseph McDevitt ("Plaintiff"), has been employed with the Clementon Borough Police Department as a Patrolman since February 28, 2006. [Dkt. No. 1, Ex. A ("Compl.") ¶¶ 14-16]. In or about August 2010, Plaintiff initiated a lawsuit against Defendant, Borough of Clementon (the "Borough"), in which Plaintiff claimed the Borough was liable for violations of the New Jersey Conscientious Employment Act ("CEPA") and the New Jersey Law Against Discrimination ("NJLAD"). (Id. at ¶ 46). As

the parties are undoubtedly familiar with the circumstances surrounding that lawsuit, the Court will not recite them here. In September 2012, Plaintiff ultimately settled his 2010 lawsuit. (Id. at ¶ 47). Plaintiff brings the present action against Defendants alleging, in-part, that Defendants have retaliated against him for initiating his previous lawsuit.

Plaintiff's detailed and lengthy complaint alleges that "from 2012 through the present, Plaintiff has engaged in numerous legally-protected activities." (Id. at ¶53(L)). According to Plaintiff, such activities include: complaints about Defendant Grover's violations of law, Defendants' overall compliance with numerous laws, and criminal conduct of Defendant Borough's management; formal fillings beginning in 2015 pertaining to violations of his rights under the National Labor Relations Act by Defendants Grover and Freiling and; disclosing certain health issues. (Id. at ¶ 54 (a)-(f)).

Next, Plaintiff alleges that he was subjected to a hostile work environment under the supervision of Defendants Freiling and Grover "from the end of his lawsuit in 2012 through the present, a period of almost 6 years." (Id. at (M), ¶ 56). During that time, Defendant Grover acted as Lieutenant and, ultimately, Chief of Police. (Id. at ¶ 58). Plaintiff alleges that Defendant Grover was the "primary source of his hostile work environment," and alleges that he experienced the following hostility from 2012 through this filing:

> Plaintiff has been assigned more duties than any possible officer could handle . . . has consistently been required to work on days scheduled off, has had scheduling requests denied or ignored, and Defendant Grover has refused to honor previously submitted vacation requests. . . . Plaintiff has been given permission to perform certain tasks, directed to perform duties . . . and then Plaintiff has learned that Defendant Grover . . . *falsely asserted to Defendant Freiling or others that Plaintiff did so without consent or authorization* . . . Plaintiff has been spoken to in a demeaning manner and treated terribly . . . has been denied by Defendant Grover adequate

assistance or backup in performing his police duties . . . has been singled out for embarrassment or humiliation . . . Plaintiff sustained a negative credit rating and collections contacts because he was lied to for nearly 10 months by said Defendants that his medical bill [for a work-injury] was submitted for payment . . . Plaintiff has been repeatedly investigated, audited, scrutinized and questioned about his conduct, time records, investigations, and other work performance. . . . Plaintiff has been denied promotions. . . . required to undergo a fitness-for-duty examination. . . . placed on an involuntary medical leave. . . . [and] had his personnel file and career substantially impaired with career jeopardizing false allegations.

(Id. at ¶ 57, 61 (a)-(m)).[1] Plaintiff's complaint further illustrates a number of allegedly retaliatory actions Defendants took against him. For example, between 2013 and 2014, Defendant Grover attempted to reprimand the Plaintiff for improperly using a police vehicle, though he had requisite permission. (Id. at ¶¶ 63-65). Defendant Grover also initiated false IA complaints against Plaintiff for theft. In one instance, Plaintiff claims "Defendant Grover admitted to Plaintiff that he had filed the complaint against Plaintiff for concerns Plaintiff had previously expressed about him, an admission of blatant retaliation. But moreover, Defendant Grover was attempting to have Plaintiff *criminally indicted.*" (Id. at ¶ 72). Plaintiff contends that in June 2016, Defendant Fisher also lodged an IA investigation against him based on false accusations—those accusations were deemed baseless. (Id. at ¶¶ 81-84).

As a result of Defendants' treatment towards Plaintiff, he alleges that he developed an anxiety disorder, amongst other health conditions. (Id. at ¶ 88). "By letter dated April 2, 2018, Defendant Johnson (Defendant Borough Administrator) confirmed knowing of Plaintiffs health concerns, requests for medical absenteeism, and identified

---

[1] Plaintiff provides details of Defendants' conduct occurring from 2013 through 2016, including instances of allegedly false discipline and pretextual Internal Affairs ("IA") investigations lodged against him. (Id. at ¶¶ 63-84).

that 'Clementon Borough agrees to make reasonable accommodations' for Plaintiff (as to requested time off for medical reasons)." (<u>Id.</u> at ¶ 90). At some point, Plaintiff approached his two (2) supervisory officers (Sergeants Worrick and Boyle) about his health and concerns of retaliation; he asked them to communicate his concerns to Defendant Grover. Defendant Grover asked the Sergeants to put the information Plaintiff expressed to them in writing. According to Plaintiff, Defendant Grover did not meet with him, but "elected instead to pretextually and for false reasons place Plaintiff on an involuntary leave of absence effective June 8, 2018" and required Plaintiff to perform a fitness for duty evaluation prior to returning to work. (<u>Id.</u> at ¶¶ 94-97). On leave, the Borough paid Plaintiff based upon a regular work schedule, which did not include "over 40 hours of overtime" that Plaintiff was already scheduled to work. (<u>Id.</u> at ¶ 99). Plaintiff went for an examination on June 13, 2018 where a clinical psychologist concluded Plaintiff "had no basis to be placed out of work." He was permitted to return to work on June 22, 2018. (<u>Id.</u> at ¶100).

Upon Plaintiff's return, he was suspended for five (5) days "per Defendant Grover." (<u>Id.</u> at ¶ 103, 105). According to the Complaint, Plaintiff's suspension occurred for three reasons:

> (1) Abuse of sick time" and his "excessive use of sick time amounts to 87 hours to date for the calendar year 2018;" (2) "Removing official documents from Department without Permission" in reference to Plaintiff performing work in his police vehicle; and (3) "insubordination" as to not providing information to another officer stemming from Plaintiffs forced medical leave.

(<u>Id.</u> ). Plaintiff's Complaint explains how each of the provided reasons for his suspension were false. (<u>Id.</u> ¶ at 104). Defendants labeled Plaintiff's discipline as "minor" even though "in accordance with all applicable policies governing Defendant Borough, 60

hours of unpaid time is clearly a form of 'Major Discipline' (triggering different civil service rights of an employee)." (Id. at ¶ 105). The civil service rights afforded with "major" discipline, permitted Plaintiff to appeal his unpaid suspension. Following service of Plaintiff's appeal, Defendants Johnson and Grover adjusted Plaintiff's suspension to a 3-day suspension—a "minor" discipline that does not trigger the same rights, such as a right to appeal—causing a withdrawal of Plaintiff's civil service commission appeal. (Id. at ¶ 108). Defendants held a disciplinary hearing, where Defendant Johnson was the sole arbiter. Plaintiff alleges that "Defendant Johnson told Plaintiff she would hold off on issuing any decision substantiating or non-substantiating the discipline if Plaintiff left Defendant Borough's Police Department and found a job elsewhere immediately," Plaintiff refused. (Id. at ¶¶ 109-112).

Finally, Plaintiff alleges that despite open positions within the Clementon Police Department (above Plaintiff's current position), he was denied promotions. He claims that "Defendants disseminated an intent to specifically hire and/or promote a detective in writing (in or about November of 2017)—but when Plaintiff was the only officer formally seeking such an elevation—Plaintiff was not elevated or considered." (Id. at ¶ 121).

Based on the aforementioned, Plaintiff alleges the following claims against all Defendants: Violations of CEPA (Count I), Violations of the NJLAD (Count II), Violations of Due Process (Count III), Malicious Prosecution (Count IV), First Amendment Retaliation (Count V), Intentional infliction of Emotional Distress (Count VI), and Violations of the Family and Medical Leave Act ("FMLA") (Count VII). Defendants Mark Armbruster, the Borough, Jonathan Fisher, Charles Grover, Jenai Johnson, and Thomas Weaver, filed a Partial Motion to Dismiss Plaintiff's Complaint

[Dkt. No. 6]; and Defendant Randall Freiling filed a Partial Motion to Dismiss, relying on his fellow Defendants' briefing. [Dkt. No. 7].

## II.  Standard of Review

Federal Rule of Civil Procedure 12(b)(6) allows a party to move for dismissal of a claim based on "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A complaint should be dismissed pursuant to Rule 12(b)(6) if the alleged facts, taken as true, fail to state a claim. Fed. R. Civ. P. 12(b)(6). When deciding a motion to dismiss pursuant to Rule 12(b)(6), ordinarily only the allegations in the complaint, matters of public record, orders, and exhibits attached to the complaint, are taken into consideration.[1] See Chester County Intermediate Unit v. Pa. Blue Shield, 896 F.2d 808, 812 (3d Cir. 1990). It is not necessary for the plaintiff to plead evidence. Bogosian v. Gulf Oil Corp., 561 F.2d 434, 446 (3d Cir. 1977). The question before the Court is not whether the plaintiff will ultimately prevail. Watson v. Abington Twp., 478 F.3d 144, 150 (2007). Instead, the Court simply asks whether the plaintiff has articulated "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).

"A claim has facial plausibility[2] when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the

---

[1]"Although a district court may not consider matters extraneous to the pleadings, a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment." U.S. Express Lines, Ltd. v. Higgins, 281 F.3d 383, 388 (3d Cir. 2002) (internal quotation marks and citations omitted) (emphasis deleted). Accord Lum v. Bank of Am., 361 F.3d 217, 221 n.3 (3d Cir. 2004) (citations omitted).

[2]This plausibility standard requires more than a mere possibility that unlawful conduct has occurred. "When a complaint pleads facts that are 'merely consistent with' a

misconduct alleged." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (citing <u>Twombly</u>, 550 U.S. at 556). "Where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." <u>Iqbal</u>, 556 U.S. at 679.

The Court need not accept "'unsupported conclusions and unwarranted inferences,'" <u>Baraka v. McGreevey</u>, 481 F.3d 187, 195 (3d Cir. 2007) (citation omitted), however, and "[l]egal conclusions made in the guise of factual allegations . . . are given no presumption of truthfulness." <u>Wyeth v. Ranbaxy Labs., Ltd.</u>, 448 F. Supp. 2d 607, 609 (D.N.J. 2006) (citing <u>Papasan v. Allain</u>, 478 U.S. 265, 286 (1986)); <u>see also</u> <u>Kanter v. Barella</u>, 489 F.3d 170, 177 (3d Cir. 2007) (quoting <u>Evancho v. Fisher</u>, 423 F.3d 347, 351 (3d Cir. 2005) ("[A] court need not credit either 'bald assertions' or 'legal conclusions' in a complaint when deciding a motion to dismiss.")). <u>Accord</u> <u>Iqbal</u>, 556 U.S. at 678-80 (finding that pleadings that are no more than conclusions are not entitled to the assumption of truth).

Further, although "detailed factual allegations" are not necessary, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." <u>Twombly</u>, 550 U.S. at 555 (internal citations omitted). <u>See</u> <u>also</u> <u>Iqbal</u>, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

---

defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" <u>Id.</u>

Thus, a motion to dismiss should be granted unless the plaintiff's factual allegations are "enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true (even if doubtful in fact)." Twombly, 550 U.S. at 556 (internal citations omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'shown'-'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

### III.   Analysis

Defendants advance a number of arguments for partial dismissal of Plaintiff's Complaint, including that: (1) Plaintiffs allegations based upon conduct that occurred prior to September 12, 2012 must be stricken from the Complaint (2) Plaintiff's NJLAD retaliation claim is barred by CEPA's Waiver Provision; (3) any CEPA cause of action that accrued prior to October 22, 2017 is not timely and barred by the Statute of Limitations; (4) Plaintiff fails to plead a prima facie case for hostile work environment;[2] (5) any acts of harassment that accrued prior to October 22, 2016 are not timely and barred by NJLAD's Statute of Limitations; (6) Plaintiff fails to state a claim for First Amendment Retaliation and (7) Plaintiff's tort claims should be dismissed for failure to comply with statutory terms of the New Jersey Torts Claims Act ("NJTCA"). [Dkt. No. 6-2]. The Court will address each argument below.

---

[2] Defendants' abandon this argument after clarification on the basis for Plaintiff's hostile work environment claim. [Dkt. No. 21 at 7]. Therefore, the Court will not address the argument here.

### A. Events occurring prior to September 12, 2012

Defendants contend that "Plaintiff should be barred from presenting any allegations based upon events occurring prior to September 12, 2012 to support his present Complaint." (Id. at 17). Initially, Defendants argue that Plaintiff's factual allegations pre-dating 2012 are barred by the release contained in Plaintiff's Settlement Agreement. In opposition, Plaintiff argues that the parties' agreement is improperly attached to Defendants' motion and moreover, provides an affirmative defense that should not be considered at this stage. Generally, a district court may not consider matters extraneous to the pleadings on a motion to dismiss. However, a court may consider "documents that are attached to or submitted with the complaint ... and any matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders [and] items appearing in the record of the case." Buck v. Hampton Twp. Sch. Dist., 452 F.3d 256, 260 (3d Cir. 2006); see also U.S. Express Lines, Ltd., 281 F.3d at 388. Additionally, "a court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir.1993) (emphasis added).

Here, the Parties' Settlement Agreement does not fit into any of the aforementioned categories permitting the Court to consider the document at this stage. While the parties prior law suit forms a basis for Plaintiff's claims, the confidential Settlement Agreement does not. The Agreement is not attached to or referenced in the Complaint. Therefore, it

is inappropriate to consider the document and the Court will deny dismissal of
Plaintiff's claims based on the parties' prior settlement.[3]

Defendants' second argument claims "any reference to alleged facts regarding the
individual defendants which occurred prior to the execution of the 2012 settlement
agreement should be <u>stricken</u>" as immaterial. [Dkt. No. 21 at 6] (emphasis added). To
that end, Defendants' ask the Court to <u>strike</u> the "significant background" predating the
September 2012 settlement from the record. [Dkt. No. 21 at 4].

"Striking a pleading, however, is a 'drastic remedy' that is only appropriate 'when the
grounds for striking it are readily apparent from the face of the pleadings.'" <u>Jurista v.
Amerinox Processing, Inc.</u>, 492 B.R. 707, 740 (D.N.J. 2013) (quoting <u>Vurimindi v.
Fuqua Sch. of Bus.</u>, No.Civ.A.10-234, 2011 U.S. Dist. LEXIS 96496, at *4-5 (E.D. Pa.
Aug. 29, 2011)). In this case, the Court finds no sufficient reason to strike any
information in Plaintiff's Complaint. The "background" information, which refers to
individual named Defendants, details each of Defendants' roles within the Borough of
Clementon and the Clementon Borough Police Department, and their role in the alleged
corruption, retaliation, and hostility towards the Plaintiff. At least in-part, the factual
allegations pre-dating Plaintiff's 2010 lawsuit, and that matters' 2012 resolution, also

---

[3] Plaintiff's Complaint explicitly alleges claims against Defendants based solely on
conduct that occurred "from the end of his lawsuit in 2012 through the present." Indeed,
each Count in the Complaint reflects the same. (Compl. ¶¶ 54-56, 60-84, 128, 132, 137,
139, 150). For this reason, Defendants' alternative argument—that certain allegations
(prior to 2012) are barred by the controversy doctrine—also fails. The controversy
doctrine is not applicable in this case. Defendants' argument that it applies to bar
Plaintiff from using pre-September 2012 events to support his claims against them, is
misplaced. To reiterate, Plaintiff pending claims against Defendants' seeks relief for
actions arising <u>after</u> settlement, and based upon conduct <u>separate</u> from his earlier
claims. Defendants' do not advance this argument further in their Reply Brief.

provide the basis for that lawsuit. Presently before the Court are claims that Defendants continuously retaliated against Plaintiff for initiating his first lawsuit. Thus, information regarding the parties' first lawsuit is relative to the current matter. Accordingly, the background information Plaintiff provides in his complaint does not readily appear so immaterial as to warrant the Court to strike the factual allegations from the Complaint.[4]

Moreover, Plaintiff defines the relevance of the background material <u>on the face of his Complaint</u>:

> The background of corruption in Defendant Borough and its Police Department is of critical importance in this case and is outlined in this lawsuit because: (1) it relates to concerns expressed by Plaintiff of illegality (underlying his instant CEPA-based lawsuit); (2) it directly underscores why Plaintiff's hostile work environment and retaliatory atmosphere have not been remedied; and (3) it shows why recent Internal Affairs ("IA") investigations and discipline against Plaintiff have been falsely affirmed without meaningful due process.[5]

(Compl. (D)). Defendants do not to argue that the purported relevance is misplaced or provide which, if any, precise allegations are, nevertheless, immaterial. Furthermore, the Court finds no sufficient reason to conduct any further relevance analysis at this point. <u>Jurista</u>, 492 B.R. at 740 ("[E]ven if the evidence may eventually be deemed

---

[4] Rule 12(f) of the Federal Rules of Civil Procedure provides that "[t]he Court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "The purpose of a motion to strike is to simplify the pleadings and save time and expense by excising from a plaintiffs complaint any redundant, immaterial, impertinent, or scandalous matter which will not have any possible bearing on the outcome of the litigation." <u>Garlanger v. Verbeke</u>, 223 F.Supp.2d 596, 609 (D.N.J.2002).

[5] Plaintiff adds that: "Understanding the corruption, cronyism, and Borough illegalities is essential to understanding why Plaintiff experienced unrelenting retaliation for . . . with **no** remedy by the Borough. Plaintiffs ***hostile work environment went unabated*** because of Defendant Borough's corruption. This is a direct aspect of Plaintiff's legal claims herein and also underlies many objections to impropriety and illegality forming the bases of Plaintiff's CEPA claims." (Compl. ¶ 27 n.3)(emphasis in original).

inadmissible at trial, the more prudent course of action is to keep the evidence in the record until that later point in time."). Accordingly, the Court will deny Defendants' request to strike factual allegations from the Complaint.

### B. Plaintiff's NJLAD retaliatory Hostile Work Environment Claim

Defendants' move to dismiss Plaintiff's NJLAD hostile work environment claim (Count II) on that grounds that it is barred by CEPA's waiver provision. [Dkt. No. 21 at 7-8]. CEPA's waiver provision provides:

> Nothing in this act shall be deemed to diminish the rights, privileges, or remedies of any employee under any other federal or State law or regulation or under any collective bargaining agreement or employment contract; except that the institution of an action in accordance with this act shall be deemed a waiver of the rights and remedies available under any other contract, collective bargaining agreement, State law, rule or regulation or under the common law.

N.J. Stat. Ann. 34:19-8. As an initial matter, the issue of <u>when</u> a plaintiff must make an election of remedies under CEPA, is unresolved. However, "courts in this district have held that 'the CEPA waiver does not attach until after the completion of discovery." <u>Rossi v. Vericare Mgmt., Inc.</u>, No. CV136884, 2016 WL 6892075, at *4 (D.N.J. Nov. 22, 2016) (quoting <u>Broad v. Home Depot U.S.A., Inc.</u>, 16 F. Supp. 3d 413, 417 (D.N.J. 2014) (acknowledging that "Courts in this district have held that the decisions issued by New Jersey courts on this issue support the view that the CEPA waiver does not attach until after the completion of discovery.")).

This Court agrees with those courts in this district—holding that the CEPA waiver provision does not bar a claim at this preliminary stage. <u>See</u> <u>Brangan v. Ball Plastic Container Corp.</u>, 2012 U.S. Dist. LEXIS 53860, at *16 (D.N.J. 2012) (denying motion to dismiss, explaining that CEPA's exclusivity provision only requires an election to be made following full factual discovery); <u>Westberry v. State Operated Sch. Dist.</u>, No. 15-

07998, 2017 U.S. Dist. LEXIS 76432, at *14 (D.N.J. May 19, 2017) ("Court finds that the CEPA waiver provision does not bar Plaintiff's other claims at the motion to dismiss stage."). Therefore, the Court will deny Defendants' Partial Motion to Dismiss Count II of Plaintiff's Complaint.

### C. Statute of Limitations

Count I and Count II of Plaintiff's Complaint seek relief under CEPA and NJLAD for retaliation and a continuing hostile work environment beginning in late 2012. (Compl. ¶¶ 127-134). Defendants argue that a majority of actions alleged in support of Plaintiff's CEPA claim and NJLAD claim are untimely and therefore, barred by the Statutes of Limitations. Under the relevant statues, an employee has two years to institute a civil action for violation of the NJLAD and one year to assert a CEPA claim. N.J. Stat. Ann. 34:19–5; Montells v. Haynes, 627 A.2d 654 (N.J. 1993). Plaintiff commenced the present action on October 22, 2018. [Dkt. No. 1]. Accordingly, Defendants' submit that Plaintiff cannot base his CEPA claim on conduct that arose before October 22, 2017, and cannot base his NJLAD claim on conduct that arose before October 22, 2017, are time-barred.

In order to argue dismissal based on the statute of limitations, it must be apparent on the face of the complaint that the claim is barred. In other words, [t]he statute of limitations, although an affirmative defense, may be raised on a Rule 12(b)(6) motion if 'the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations.'" Southward v. Elizabeth Bd. of Educ., No. CV 15-3699, 2017 WL 111924, at *6 (D.N.J. Jan. 11, 2017) (quoting Bethel v. Jendoco Constr. Corp., 570 F.2d 1168, 1174 (3d Cir. 1978)).

When a claims arises under anti-discrimination law, such as here, the continuing violation doctrine may provide an exception to the limitations period. See Roa v. Roa, 985 A.2d 1225, 1231 (N.J. 2010); Green v. Jersey City Bd. of Educ., 828 A.2d 883, 891-92 (N.J. 2003). "The doctrine provides that when an individual experiences a "continual, cumulative pattern of tortious conduct, the statute of limitations does not begin to run until the wrongful action ceases."' Roa, 985 A.2d at 1231 (quoting Wilson v. Wal–Mart Stores, 729 A.2d 1006 (N.J. 1999)). It follows that a continuing violation is "a series of separate acts that collectively constitute one 'unlawful employment practice." Nat'l R.R. Passenger Corp. v. Morgan, 536 *U.S.* 101, 117, 122 (2002). Discrete acts, like "termination, failure to promote, denial of transfer, or refusal to hire," are separate actionable unlawful employment practices that "occur" on the day that they happen. Id. at 110, 117.

Notably, "[h]ostile environment claims are different in kind from discrete acts. Their very nature involves repeated conduct. The 'unlawful employment practice' therefore cannot be said to occur on any particular day." Morgan, 536 U.S. at 115. Furthermore, the New Jersey Supreme Court has noted: "that a victim's knowledge of a claim is insufficient to start the limitations clock so long as the defendant continues the series of non-discrete acts on which the claim as a whole is based." Shepherd v. Hunterdon Developmental Ctr., 174 N.J. 1, 22, 803 A.2d 611, 624 (2002).

Here, Plaintiff alleges violations of CEPA and NJLAD for Defendant's ongoing hostility towards him—ranging from humility, improper assignment of duties, and false discipline, to false IA complaints, failure to promote, and suspension—for, *inter alia*, filing his 2010 lawsuit. He submits to the Court that the continuing violation doctrine applies to these claims and prevents a statute of limitations analysis at the motion to

dismiss stage. The New Jersey Supreme Court has noted that "the doctrine is not always straightforward in its application." Shepherd v. Hunterdon Developmental Ctr., 803 A.2d 611, 624 (N.J. 2002).

Given that fact, a majority of cases which engage in an analysis under the continuing violation doctrine occur after factual discovery.[6] Notwithstanding, Courts in this district have also addressed whether the continuing violation doctrine applies to save otherwise time barred claims at the pleading stage. See Skoorka v. Kean Univ., No. 2:16-cv-3842, 2018 U.S. Dist. LEXIS 106447, at *38 (D.N.J. June 26, 2018); Southward, 2017 WL 111924, at *6; Sarno v. Wal-Mart Stores, Civil Action No. 12-002075, 2012 U.S. Dist. LEXIS 165328, at *12 (D.N.J. Nov. 20, 2012); Clayton v. City of Atl. City, 722 F. Supp. 2d 581, 591 (D.N.J. 2010).

The Court finds that, here, it is not apparent on the face of Plaintiff's complaint that his NJLAD or CEPA claim are time-barred. The continuing violation doctrine "allows a plaintiff to pursue a claim for discriminatory conduct if he or she can demonstrate that each asserted act by a defendant is part of a pattern and at least one of those acts occurred within the statutory limitations period." Sarno v. Wal-Mart Stores E., L.P., No. CIV.A. 12-002075, 2012 WL 5880361, at *4 (D.N.J. Nov. 20, 2012) (quoting Smith v. Twp. of E. Greenwich, 519 F. Supp. 2d 493, 505 (D.N.J. 2007). Plaintiff's detailed Complaint contains allegations of an ongoing pattern of retaliation. Most notably, Defendants allegedly forced Plaintiff to take an involuntary leave of absence, required he undergo a fitness-for-duty evaluation, and issued him an unpaid suspension all within

---

[6] See, e.g., Ivan v. Cty. of Middlesex, 595 F. Supp. 425,441 (D.N.J. 2009); Roa, 985 A.2d at 1228; Smith v. Twp. Of E. Greenwich, 519 F. Supp. 2d 493, 499 (D.N.J. 2007); Green v. Jersey City Bd. of Educ., 828 A.2d 883, 885 (N.J. 2003), AMTRAK v. Morgan, 536 U.S. 101, 106 (2002); O'Connor v. City of Newark, 440 F.3d 125, 126 (3d Cir. 2006)

the year 2018. Consequently, at this stage, where there is "ample evidence of . . . the creation of a hostile workplace within the two-year [, and one-year] statute of limitations. . . . , the Court need not determine whether the claim extends to incidents prior to this [limitations] period under the 'continuing violation' doctrine, or whether such incidents could be introduced as evidence." Clayton, 722 F. Supp. 2d 581, 591 (D.N.J. 2010).

Furthermore, Defendants' argument with regard to Plaintiff's CEPA and NJLAD claim fails to recognize the very nature of Plaintiff's claims—that each act (after Plaintiff's 2012 settlement) was one part of an ongoing pattern of a retaliation, which cultivated in a hostile work environment that is alleged to continue through present. See Matthews v. N.J. Inst. of Tech., No. 09-2840(JEI/JS), 2010 U.S. Dist. LEXIS 27182, at *12 (D.N.J. Mar. 23, 2010) (denying a motion to dismiss "[b]ecause [plaintiff] alleges that [the defendants] retaliated against him by creating a hostile work environment that continues 'through to the present date', this Court cannot dismiss his claim as time-barred." (citation omitted)). Therefore, the Court will Deny Defendants' Partial Motion to Dismiss Plaintiff's NLAD and CEPA claims as untimely.

**D. First Amendment Retaliation Claim**

To state a claim for First Amendment retaliation, a plaintiff must allege: (1) that the activity in question is protected by the First Amendment, and (2) that the protected activity was a substantial factor in the alleged retaliatory action." Hill v. Borough of Kutztown, 455 F.3d 225, 241 (3d Cir. 2006) (internal quotations and citation omitted). "A public employee has a constitutional right to speak on matters of public concern without fear of retaliation." Brennan v. Norton, 350 F.3d 399, 412 (3d Cir. 2001). Accordingly, a public employee's statement is protected activity under the First

Amendment when "(1) in making it, the employee spoke as a citizen, (2) the statement involved a matter of public concern, and (3) the government employer did not have 'an adequate justification for treating the employee differently from any other member of the general public' as a result of the statement he made." Hill, 455 F.3d 225 at 241–42 (quoting Garcetti v. Ceballos, 547 U.S. 410, 410 (2006)).

Count V of Plaintiff's Complaint asserts a claim for First Amendment Retaliation, alleging that Plaintiff voiced "many concerns and complaints as a citizen," for which he has experienced retaliation and a hostile work environment. (Compl. Count V). For instance, Plaintiff contends that he has "complained of illegal practices, the filing of false reports which constitutes a crime, falsification of evidence, corruption, and other police." [Dkt. No. 11 at 25-16]. Most notably, Plaintiff alleges that he engaged in protected activity when he filed a lawsuit against Defendants for violations of CEPA in 2010. Plaintiff's Complaint details the allegations of that pervious lawsuit, which was related to Plaintiff's reports of, and objections to, a Sergeant's alleged unlawful activities. (Compl. ¶ 46). See generally, Borough of Duryea, Pa. v. Guarnieri, 564 U.S. 379 (2011) (finding that speech contained within a plaintiff's lawsuit may constitute protected activity under the First Amendment if it passes the public concern test); see also Carmichael v. Thomson, No. CIV. 14-3323, 2015 WL 1010485, at *7 (D.N.J. Mar. 6, 2015) ("Speech that "bring[s] to light actual or potential wrongdoing or breach of public trust" is a matter of public concern." (quoting Connick v. Myers, 461 U.S. 138, 148 (1983)).

Here, "Defendants' do not deny that plaintiff alleges a myriad of 'protected speech' in support of his claim." [Dkt. No. 21 at 9]. But they do contend that "other than identifying the filing of plaintiff's prior lawsuit in 2010 as protected speech, plaintiff never identifies

when the subsequent alleged protected speech occurred." [Dkt. No. 21 at 9]. More specifically, Defendants' argue that Plaintiff's First Amendment claim should be dismissed for failure to (1) plead sufficient facts to show who specifically Plaintiff complained to and when these complaints occurred; and (2) plead sufficient facts that tie the specific speech to any retaliation Plaintiff may have suffered. [Dkt. No. 6-2 at 28].[7]

In that regard, Defendants' argue that a number of complaints "from 2012 to the present" alleged in Plaintiff's Complaint are "vague and conclusory" and therefore, insufficient to state a First Amendment claim. They highlight the following allegations:

> (b) [Plaintiff] complained of Defendant Grover engaging in multiple violations of local, state and/or federal law(s) by misuse of police resources, falsification of overtime, falsification of evidence and/or investigations, false reporting, and other actions by Defendant Grover; (c) He complained of Defendants' overall complicity in retaliation, corruption, and failure to abide by laws in administration of justice, due process, and other laws; ( d) He complained of actual criminal conduct of Defendant Borough management, including but not limited to Defendant Grover . . .

(Id. ; Dkt. No. 6-2 at 27-28). The Court's analysis herein will focus solely on these statements.

A motion to dismiss pursuant to Rule 12(b)(6) requires courts to "examine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Delaware Nation v. Pennsylvania, 446 F.3d 410, 415 (3d Cir. 2006) (citing Pinker v. Roche Holdings, Ltd., 292 F.3d 361, 374 n. 7 (3d Cir. 2002)). A reasonable reading of

---

[7] The Court notes that in their reply brief, Defendants argue, for the first time, that Plaintiff's First Amendment Retaliation claim should also be dismissed because alleged retaliatory acts do not fall within the appropriate state of limitations. An argument raised in the first instance in a reply brief exceeds the scope of the original motion and therefore, the Court declines to address that argument. See Dana Transport v. Ableco Finance, 2005 U.S. Dist. LEXIS 18086 (D.N.J. Aug. 17, 2005).

the Complaint in this case reveals that Plaintiff complained of Defendant Grover's violations of law and other wrongdoings, that Defendant Grover was aware that Plaintiff had expressed concerns about him and "filed a complaint against Plaintiff for [those] concerns." (Compl. ¶ 72). Plaintiff also complained to his then-chief of police, Defendant Freiling, that Defendant Grover "was making a false IA complaint [against him] and outlined for Defendant Freiling numerous lies being told by Defendant Grover." (Id. at ¶ 73). The Complaint further details how Plaintiff later expressed to his two Superior Sergeants that he felt attacked by Defendant Grover and feared Defendant Grover would initiate false complaints against him in the future, as he had in the past. These concerns were subsequently communicated to Defendant Grover. (Id. at ¶¶ 91-96).

Therefore, Plaintiff provides factual support that he engaged in protected activity by complaining about Defendant Grover's falsification of investigations, and Defendants' overall retaliation and harassment. The Complaint, however, fails to allege facts that support Plaintiff complained of Defendant Grover engaging in multiple violations of local, state and/or federal law(s) by misuse of police resources, falsification of overtime, falsification of evidence; or of Defendants' corruption, and failure to abide by laws in administration of justice, due process, and other laws; or that he complained of actual criminal conduct of Defendant Borough management. Plaintiff merely concludes that he made these complaints without providing any particular statements he made.[8] While the Complaint undeniably identifies a vast variety of misconduct by the

_____

[8] To illustrate, the Complaint states that "Plaintiff complained of Defendant Grover engaging in multiple violations of local, state and/or federal law(s) by misuse of police resources, falsification of overtime, falsification of evidence and/or investigations, false reporting, and other actions by Defendant Grover," but the Complaint does not support this allegation with any particular statement Made by the Plaintiff. The Complaint also provides that the Plaintiff complained

Defendants, there are no facts alleging what specific conduct Plaintiff actually complained of, to whom he complained to, or when he complained about it. Likewise, the Complaint is devoid of facts linking the complaints at issue with any of the various retaliatory acts and hostility Plaintiff experienced. As such, Court finds that Plaintiff's Complaint "does not clearly set forth with sufficient detail the specific speech that [Mr. McDevitt] is alleging was protected, nor which incident(s) or adverse employment actions followed a specific statement and violated h[is] First Amendment rights." Rogosich v. Twp. of W. Milford Mun. Utilities Auth., No. CIV. 12-2916, 2013 WL 4047649, at *3 (D.N.J. Aug. 9, 2013).

Therefore, the Court finds that Plaintiff has not provided sufficient facts to plead a First Amendment Claim based on the "complaints" stated above. Thus, Plaintiff's First Amendment Retaliation claim will be dismissed only as to these limited allegations. Count V will survive as a claim based on the following alleged protected activity: (1) Plaintiff's 2010 lawsuit (Compl. at ¶ 54(a)), (2) complaints of NLRA violations (Id. (e)), (3) Defendant Grover's falsification of evidence and/or investigations and false reporting (Id. at (b)), and (4) complaints of retaliation and harassment (Id. at (c)).

### E. Plaintiff's Failure to Comply with the NJTCA

Finally, Defendants' contend that Plaintiff has failed to abide by the notice requirement of the NJTCA, and therefore, Plaintiff's claims for malicious prosecution (Count IV) and intentional infliction of emotional distress (Count VI) are barred. The

---

of Defendants' "corruption, and failure to abide by laws in administration of justice, due process, and other law." Without more, Plaintiff lack sufficient allegations under the Iqbal/Twombly standard to state a claim, on this basis. (See Compl. ¶ 53(L)).

NJTCA governs the liability of public entities for their negligence. N.J. Stat. Ann. § 59:1-2. According to the Act, "[e]xcept as otherwise provided . . . no action shall be brought against a public entity or public employee under this act unless the claim upon which it is based shall have been presented in accordance with the procedure set forth in this chapter." N.J. Stat. Ann. § 59:8-3. The procedural requirements establish that a claimant must give the public entity notice of the tort lawsuit and sets forth the time frame for initiating claims relating to for injury or damage to a person, such as in this case. The NJFTCA provides that a claimant may file suit "after the expiration of six months from the date notice of claim is received." Id. at 59:8-8.

The New Jersey Supreme Court explained the goals of these procedural requirements are: (1) "to allow the public entity at least six months for administrative review with the opportunity to settle meritorious claims prior to the bringing of suit"; (2) "to provide the public entity with prompt notification of a claim in order to adequately investigate the facts and prepare a defense[,]" Margolis & Novack, *supra,* 1972 Task Force Comment to N.J.S.A. 59:8-3; (3) "to afford the public entity a chance to correct the conditions or practices which gave rise to the claim"; and (4) to inform the State "in advance as to the indebtedness or liability that it may be expected to meet." Beauchamp v. Amedio, 164 N.J. 111, 121-22, 751 A.2d 1047, 1052-53 (2000).

Plaintiff does not dispute that he was required to follow the procedure set forth in the NJTCA. He filed a notice of tort claim on the Borough on October 22, 2018, but admits that he added tort claims to this lawsuit prior to the expiration of the 6-month waiting period. [Dkt. No. 11 at 28]. Plaintiff, however, argues that Defendants' are merely using the rule to cause a delay in this litigation. Plaintiff contends that despite the main purpose of the 6-moth rule—to allow the public entity time for review,

investigation, and correct the actions giving rise to the claim—"Defendants in 3 months have not even once requested to interview a single witness as to McDevitt's lawsuit despite him providing ***many*** sworn witness certifications attached to his lawsuit." (<u>Id.</u> at 29) (emphasis in original). In addition, Plaintiff identifies that the nature of his suit is an <u>ongoing</u> retaliation and hostile work environment, "the issues in [his] lawsuit have been the basis of informal and formal complaints preceding his lawsuit for several years (with Defendants already having had the opportunity ***for years*** to review McDevitt's lawsuit)." (<u>Id.</u>) (emphasis in original). To that end, Plaintiff argues that dismissing the case (without prejudice) is unwarranted, as it would sever Plaintiff's many related claims and would be contrary to the interest of judicial economy, at this time. (<u>Id.</u> at 29-31). Contrary to Plaintiff's view, Defendant's claim his "failure to abide by the statutory waiting period prevented the Clementon defendants from having an opportunity to investigate plaintiffs' claims and effect a settlement." [Dkt. No. 6-2 at 30].

Generally, the remedy for violation of the notice requirements of the NJTCA is to dismiss Plaintiff's tort claims without prejudice and with the right to refile. Violation cannot bar a plaintiff's claims. <u>Reale v. Wayne Twp.</u>, 332 A.2d 236, 242 (N.J. Law. Div. 1975). Under the circumstances of this case, the Court finds that dismissal would be inappropriate. "New Jersey courts have previously recognized, dismissal without prejudice is an "inappropriate" disposition where sufficient time has passed since the filing of the complaint and there has been no showing that the public entity has been "frustrated in undertaking an investigation of the claim." <u>Troy D. v. Mickens</u>, 806 F. Supp. 2d 758, 776 (D.N.J. 2011) (quoting <u>Reale v. Twp. of Wayne</u>, 111, 332 A.2d 236 (N.J. Super. Law Div. 1975)).

Here, Defendants fail to show any frustration in undertaking an investigation or effectuating settlement. Plaintiff's two tort claims are directly related to his five other counts, all of which concern Defendants' alleged hostility and retaliation towards Plaintiff. According to Plaintiff's Complaint, the criminal prosecution and emotional distress he faced was a result of actions that began in 2012. Plaintiff complained to Defendants about retaliation prior to the filing of this Complaint and disclosed his anxiety condition in April 2018. (Compl. ¶ 90). In fact, the basis of this suit revolves around years of alleged misconduct by Defendants.

Accordingly, it appears that dismissing the claims at this time would not prejudice Defendants'. In fact, Dismissal without prejudice would have little effect on Defendants, while at the same time delay this litigation and sever Plaintiff's claims. See Simmons v. City of Paterson, No. 2:11-CV-00640, 2012 WL 2878077, at *4 (D.N.J. July 13, 2012) (finding that dismissal based on failure to abide by the NJTCA waiting period was unwarranted where "Defendants have had a year and a half to 'investigate the claim' and 'work toward a settlement,' the goals of the six-month waiting period have been met, and dismissal is inappropriate"). Therefore, the Court will allow Plaintiff's tort claims to proceed and will deny Defendant's Partial Motion to Dismiss Count IV and Count VI. See Guerrero v. City of Newark, 522 A.2d 1036, 1041 (N.J. Super. App. Div. 1987).

IV.     Conclusion

For the forgoing reasons, the Court will deny in part and grant in Defendants' Partial Motions to Dismiss [Dkt. Nos. 6, 7].

An appropriate Order shall issue.

Dated: January 28, 2020          _s/ Joseph H. Rodriguez_____
                                 Hon. Joseph H. Rodriguez,
                                 UNITED STATES DISTRICT JUDGE